# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-031

Filing Date: March 31, 2021

Nos. A-1-CA-38091 and A-1-CA-37936
(consolidated for purpose of the opinion)

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.

**TOBBY TWOFEATHERS ANDERSON,**

    Defendant-Appellant.

and

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.

**DUSTIN LEE WILSON,**

    Defendant-Appellant.

**APPEALS FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Certiorari Granted, June 28, 2021, No. S-1-SC-38782. Released for Publication August 31, 2021.

Hector H. Balderas, Attorney General
Anne Minard, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Charles D. Agoos, Assistant Appellate Defender
Santa Fe, NM

for Appellants

**OPINION**

**HANISEE, Chief Judge.**

**{1}**     In this opinion, we consider two appeals: those of Dustin Lee Wilson and Tobby Twofeathers Anderson (collectively, Defendants).[1] Defendants were among several inmates in Pod D-2 of the Otero County Detention Center who defied an order to lock down during a shift change of correction officers on April 30, 2017. Both were convicted of unlawful assault on a jail, contrary to NMSA 1978, Section 30-22-19 (1963). On appeal, Defendants contend that (1) the assault on a jail statute is unconstitutionally vague; (2) the assault on a jail instruction failed to provide the jury with an accurate rendition of the relevant law; and (3) the evidence was insufficient to support convictions. Anderson additionally asserts that the district court committed reversible error by (1) refusing to instruct the jury on lesser included offenses and (2) denying his motion to continue. We affirm.

**BACKGROUND**

**{2}**     On April 30, 2017, Defendants were among several inmates who defied a lockdown order arising from events that began when a guard forcibly ended an inmate's phone call. Some inmates refused to lock down during the ensuing routine shift change, prompting the shift supervisor to summon additional law enforcement officers. Realizing their pod was to be raided, those inmates attempted to block the entrance to it with a mattress and plastic cots, and one squirted liquid soap on the stairs and floor leading to the pod. As officers ascended the stairs to the pod, inmates used the mattress to try to push them backward. In Defendants' separate trials, the State presented still imagery from a stationary surveillance camera that depicts Defendants participating in the conflict. The conflict lasted only about ninety seconds and ended when officers deployed pepper spray, tasers, and shock shields to regain control of the inmates and pod. Convicted of all counts with which they were charged,[2] Defendants now appeal their convictions for assault on a jail.

**DISCUSSION**

## I.     Overview of Relevant History of Section 30-22-19

**{3}**     This case requires examination of New Mexico's assault on a jail statute. *See* § 30-22-19. We briefly outline its legislative history before addressing Defendants' arguments on appeal. The assault on a jail statute originated shortly after the Territory of New Mexico was established. At the time, led by the likes of Billy the Kid,

---

[1]This opinion resolves case numbers A-1-CA-37936 and A-1-CA-38091. Because these cases raise related issues arising from the same incident, we consolidate the cases for decision. Rule 12-317(B) NMRA.

[2]Both Defendants were convicted of assault on a jail. Wilson was also convicted of fourth degree battery upon a peace officer, contrary to NMSA 1978, Section 30-22-24 (1971), but does not appeal from that conviction.

penetrations of jail premises by outside actors were common, to the chagrin of sheriffs like Pat Garrett, and evidently the New Mexico Legislature. *See* Richard H. Underwood, *A Riff on Billy the Kid*, 32 Touro. L. Rev. 225, 230-31 (2016). A ban on such activities was passed into law when the Legislature criminalized both intended and actual assaults on jails, defining the former as that "intended to be committed on the jail . . . for the purposes of procuring the homicide or escape of any or several of the prisoners which may be in jail," and the latter as actual penetration "by force and with violence, into any jail" with the same intended objective. Laws of the Territory of N.M. 1857-58, ch. 8, §§ 1, 4. This language remained largely intact even after New Mexico obtained statehood in 1912. *See* N.M. Stat. Ann. §§ 3056, 3059 (1915).

{4} In 1963, as part of a general revision of the entire criminal code, *see State v. Fellhauer*, 1997-NMCA-064, ¶ 6, 123 N.M. 476, 943 P.2d 123, the Legislature enacted the current iteration of Section 30-22-19, repealing the historic requirement that in order for an assault on a jail to be criminal in nature it must occur to achieve "the homicide or escape of any or several of the prisoners." *Compare* § 30-22-19, *with* Laws of the Territory of N.M. 1857-58, ch. 8, § 1. Indeed, the current statute expands its applicability by requiring no such specific purpose associated with the proscribed act. Yet even after 1963, jury instructions in cases prosecuting violations of the statute continued to unnecessarily include a specific intent element related to the removed language, thereby heightening the evidentiary burden necessary for the state to attain conviction. *See State v. Tijerina* (*Tijerina I*), 1972-NMCA-169, ¶ 44, 84 N.M. 432, 504 P.2d 642 (requiring the jury to find that the defendant acted with the "purpose and intent of procuring the escape" of prisoners), *transferred to State v. Tijerina* (*Tijerina II*), 1973-NMSC-105, 86 N.M. 31, 519 P.2d 127; *see also* UJI 14-2227 NMRA comm. cmt. ("Although the statutory elements do not include any specific intent to procure the escape of prisoners, that intent was included in jury instructions in the prosecution for the Tierra Amarilla courthouse raid of 1967.").

{5} As presently codified, Section 30-22-19 states:

> Unlawful assault on any jail consists of any person or group of persons assaulting or attacking any jail, prison or other public building or place of confinement of prisoners held in lawful custody or confinement.
>
> Whoever commits unlawful assault on any jail, prison or other public building or place of confinement of prisoners held in lawful custody or confinement is guilty of a third degree felony.

We observe that while the Legislature saw fit to remove the intent element, it retained the penalty classification for the offense as a third degree felony. *State v. Chavez*, 2009-NMSC-035, ¶ 16, 146 N.M. 434, 211 P.3d 891 (stating that a third-degree felony classification indicates that "our Legislature anticipated that criminal prosecution would be reserved for the most serious occurrences, and not for minor or theoretical dangers").

**{6}** Defendants contend that in recent years at the district court level, Section 30-22-19 has been broadly applied and employed to charge multiple inmates who jointly participated in incidents that commenced not outside of, but within, jail or prison facilities.[3] *See Criminal Complaint*, *State v. Gurule*, No. T-4-CR-2015-002791 (Bernalillo Cnty. Metro. Ct. Mar. 1, 2015) (alleging that the defendant kicked a metal cage and blocked tasers with his clothing); *Criminal Complaint*, *State v. Cordero*, No. T-4-CR-2015-002792 (Bernalillo Cnty. Metro. Ct. Mar. 1, 2015) (arising from the same incident and alleging that the defendant broke a window and used a mattress to block chemical agents). Thus, the focus of the statute's use by prosecutors has shifted from raid to uprising.

## II. The Assault on a Jail Statute Is Not Unconstitutionally Vague

**{7}** Defendants contend that "in the absence of a requirement of a forcible entry into a jail, the assault on a jail statute is unconstitutionally vague." Specifically, Defendants assert that "[a]bsent a limiting construction, the statute . . . fail[s] to sufficiently apprise defendants of what conduct the statute criminalizes." Defendants argue that "the vagueness of the term 'assault,' which can be read so broadly as to include non-compliance, dignitary slights, and even omissions, and the term 'jail,' which can be read so broadly as to encompass an operation or a metaphysical institution . . . could potentially render the statute unconstitutionally vague." Defendants also raise policy concerns, arguing that the statute unconstitutionally delegates standardless discretion to law enforcement officers who may then "arbitrarily decide to felonize almost any conduct that they subjectively perceive to be in any way 'assaultive.' " The State answers that Defendants' vagueness challenge fails because "the plain language of Section 30-22-19 proscribes Defendant[s'] acts."

**{8}** We review a vagueness challenge de novo "in light of the facts of the case and the conduct which is prohibited by the statute." *State v. Smile*, 2009-NMCA-064, ¶ 17, 146 N.M. 525, 212 P.3d 413 (internal quotation marks and citation omitted). "[W]e review void-for-vagueness constitutional claims even when they are not preserved below." *State v. Chavez*, 2019-NMCA-068, ¶ 11, 451 P.3d 115. We apply "a two-part test for vagueness, considering whether the statute (1) fails to provide persons of ordinary intelligence using ordinary common sense a fair opportunity to determine whether their conduct is prohibited, or (2) fails to create minimum guidelines for enforcement and thus encourages subjective and ad hoc application of the law." *State v. Tsosie*, 2011-NMCA-115, ¶ 31, 150 N.M. 754, 266 P.3d 34 (alterations, omissions, internal quotation marks, and citation omitted). Our case law requires that we exercise the "strong presumption of constitutionality [that] underlies each legislative enactment, and [hold] the party challenging constitutionality [to its] burden of proving [the] statute is unconstitutional beyond all reasonable doubt." *State v. Laguna*, 1999-NMCA-152, ¶ 24, 128 N.M. 345, 992 P.2d 896. "Appellate courts have a duty to construe a statute in such

---

3Importantly, New Mexico's appellate courts have had few opportunities to hear challenges to the assault on a jail statute. Our authoritative case law regarding the statute is limited to the following: *Tijerina I*, 1972-NMCA-169, *Tijerina II* 1973-NMSC-105, *State v. Sanchez*, 2008-NMSC-066, 145 N.M. 311, 198 P.3d 337. None address Section 30-22-19 from the standpoint of constitutional vagueness.

a manner that it is not void for vagueness if a reasonable and practical construction can be given to its language." *State v. Duttle*, 2017-NMCA-001, ¶ 13, 387 P.3d 885 (internal quotation marks and citation omitted).

**{9}** Applying the first part of the vagueness test, we disagree with Defendants that the assault on a jail statute fails to "provide persons of ordinary intelligence using ordinary common sense a fair opportunity to determine whether their conduct is prohibited[.]" *Tsosie*, 2011-NMCA-115, ¶ 31 (internal quotation marks and citation omitted). Defendants ask us to conclude that absent a requirement of external forcible entry into a jail, the assault on a jail statute fails to sufficiently apprise defendants of what conduct the statute criminalizes. But the conduct prohibited by the statute— "assaulting or attacking any jail"—is actually quite straightforward. Section 30-22-19. "Assault" in this context is given its non-law dictionary definition and, when used as a transitive verb, means "to attack violently." UJI 14-2227 use note 2; *Assault, Merriam-Webster Dictionary*, http://www.merriam-webster.com/dictionary/assault (last visited Feb. 19, 2021); *see also State v. Barber*, 2004-NMSC-019, ¶ 10 n.1, 135 N.M. 621, 92 P.3d 633 (stating that use notes promulgated by the New Mexico Supreme Court are binding authority). Applying this evaluative threshold, we conclude that a person of ordinary intelligence using common sense would understand that Section 30-22-19 prohibits a violent attack on a jail's facilities or operations, regardless of whether the attack originates inside or outside of the jail. As applied in this case, we have no difficulty in determining that Section 30-22-19 provided fair warning that Defendants' conduct—barricading a door with a mattress and plastic cot and "rushing" officers with the mattress to push them back down soaped-up stairs in an effort to prevent prison officials, law enforcement, or facility personnel from entering a pod—constituted unlawful assault on a jail.

**{10}** While Defendants correctly point out that "prosecutions for assault on a jail have departed from the historical understanding of the crime[,]" nothing in our jurisprudence or the language of the statute itself permits us to add to that required to trigger the statute's applicability so as to the "narrow construction of Section 30-22-19 . . . requir[ing] an external invasion into the physical boundaries of a jail for the purpose of procuring the escape of prisoners or similarly interfering with the lawful confinement of prisoners" sought by Defendants. Had the Legislature intended to exclusively criminalize such external invasions by outside actors, it could just as easily have said so as when it removed the former specific purpose Defendants wish to restore. *See* § 30-22-19. Indeed, Committee Commentary regarding Section 30-22-19 indicates that the Legislature intentionally opted not to include a specific intent element in the current iteration of the assault on a jail statute. *See* UJI 14-2227 comm. cmt. ("[T]he statutory elements do not include any specific intent to procure the escape of prisoners[.]"). "The Legislature knows how to include language in a statute if it so desires." *State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 (alteration, internal quotation marks, and citation omitted). Distilled to its essence, Defendants ask this Court to add statutory elements that the Legislature chose not to include, something we will not do. "We may only add words to a statute where it is necessary to make the statute conform to the

[L]egislature's clear intent, or to prevent the statute from being absurd." *State v. Maestas*, 2007-NMSC-001, ¶ 15, 140 N.M. 836, 149 P.3d 933.

**{11}**    Turning to the second part of the void-for-vagueness test, which asks whether the statute fails to provide minimum guidelines for enforcement, *see Tsosie*, 2011-NMCA-115, ¶ 31, we are similarly unpersuaded. To satisfy this query, a defendant "can demonstrate that the statute permits police officers, prosecutors, judges, or juries to engage in arbitrary and discriminatory enforcement of the statute, which occurs because the statute has no standards or guidelines and therefore allows, if not encourages, subjective and ad hoc application." *Smile*, 2009-NMCA-064, ¶ 18 (emphasis, internal quotation marks, and citation omitted). In *Coates v. City of Cincinnati*, for example, the United States Supreme Court declared a statute unconstitutionally vague because it criminalized conduct that "annoyed" police officers. 402 U.S. 611, 614 (1971). The Supreme Court determined that, not only did the statute fail to put individuals on notice of what conduct would annoy a police officer, but it also gave the police arbitrary discretion to charge an individual with a violation of the statute using a vague and subjective standard. *See id.* ("Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.").

**{12}**    Unlike the nearly limitless discretion given to law enforcement officials with differing levels of patience by the City of Cincinnati and taken away by the Supreme Court, New Mexico's assault on a jail statute has guidelines prohibiting certain conduct, whether by persons incarcerated or not, related to jails—conduct that has nothing to do with an official's subjective feelings about a given action or behavior. Section 30-22-19 forbids assaulting or attacking facilities where inmates are imprisoned in New Mexico. This to us means actions that physically damage, alter or destroy a facility, and suffices to provide adequate parameters to prosecutorial determinations. Indeed, the State's decision to charge Defendants with assault on a jail entailed no application of discretion, much less of an arbitrary nature, beyond that inherent to many such decisions. *See Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972) ("As always, enforcement [of a criminal statute] requires the exercise of some degree of police judgment."). We hold that the assault on a jail statute is not unconstitutionally vague.

### III.    The District Court Did Not Commit Fundamental Error in Instructing the Jury Regarding Assault on a Jail

**{13}**    Defendants contend that the elements included in the jury instruction defining assault on a jail failed to provide the jury with an accurate rendition of the law and therefore constituted fundamental error. Defendants assert as well that because the challenges to the jury instruction raise questions of statutory construction, we should review them de novo. The State argues that Defendants failed to preserve the jury instruction issue at trial and therefore are not entitled to de novo review, asserting that instead fundamental error review applies.

**{14}**    "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved[,] we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citation omitted). "The primary purposes of the preservation requirement are (1) to alert the trial court to a claim of error so that it has an opportunity to correct any mistake, and (2) to give the opposing party a fair opportunity to respond and show why the court should rule against the objector." *State v. Montoya*, 2005-NMCA-005, ¶ 7, 136 N.M. 674, 104 P.3d 540 (internal quotation marks and citation omitted). Generally, "to preserve error it is necessary either to tender a correct instruction and to alert the mind of the trial court to the fact that the tendered instruction corrects the defect complained of or to point out the specific vice in the instruction given by proper objection thereto." *Zamora v. Smalley*, 1961-NMSC-004, ¶ 13, 68 N.M. 45, 358 P.2d 362. "[M]ere assertion that the given instruction is not an accurate statement of the law is insufficient to alert the mind of the trial judge to the claimed vice of the instruction." *Grassie v. Roswell Hosp. Corp.*, 2011-NMCA-024, ¶ 36, 150 N.M. 283, 258 P.3d 1075 (internal quotation marks and citation omitted). Here, neither defense counsel objected to the jury instruction given at both trials which defined that necessary to convict Defendants for assault on a jail, nor did they tender a competing instruction, and consequently Defendants' challenge to that instruction was not preserved. We therefore review for fundamental error.

**{15}**    "Under the doctrine of fundamental error, an appellate court has the discretion to review an error that was not preserved in the trial court to determine if a defendant's conviction shocks the conscience because either (1) the defendant is indisputably innocent, or (2) a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Astorga*, 2015-NMSC-007, ¶ 14, 343 P.3d 1245 (alteration, internal quotation marks, and citation omitted). "Under this standard, we must determine whether a reasonable juror would have been confused or misdirected . . . from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Samora*, 2016-NMSC-031, ¶ 27, 387 P.3d 230 (internal quotation marks and citation omitted). "When reviewing for fundamental error, we first determine if error occurred; if so, we next determine whether that error was fundamental." *Astorga*, 2015-NMSC-007, ¶ 14 (internal quotation marks and citation omitted).

**{16}**    We focus on whether the absence of an instruction defining the word "assault"— as challenged by Defendants in arguing that the range of proscribed conduct is unknowable under Section 30-22-19—constitutes fundamental error.[4] Our courts have stated that a missing definition generally "cannot result in the sort of 'fundamental unfairness' that undermines the integrity of the judicial system[,]" *Barber*, 2004-NMSC-

---

[4]Defendants also challenge the absence of a definition as to the word "jail" but fail to develop an argument as to that contention, arguing only vaguely that the statute could somehow apply to a "non-physical corporate form" without explaining whether or if the prison facility in this case might be considered such or elaborating upon how such differences might relate to the applicability of Section 30-22-19. We do not consider such unclear or undeveloped arguments. *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031.

019, ¶ 20, unless the missing definition is "akin to a missing elements instruction." *State v. Mascareñas*, 2000-NMSC-017, ¶ 20, 129 N.M. 230, 4 P.3d 1221 (holding that "the jury instructions should have included a definition of 'reckless disregard' to prevent confusion of the standard necessary to sustain a conviction" and that "the trial court's failure to provide the instruction was a critical determination akin to a missing elements instruction"). Defendants assert that "[t]he vagueness of the jury instructions given below is 'akin to a missing elements instruction' because, on appellate review, there is no way to know whether the jury actually found the statutory elements of an assault on a jail beyond a reasonable doubt."

{17}    Here, though, the missing definition of assault does not implicate a critical determination akin to a missing elements instruction. We are guided by *State v. Luna*, which elaborates that the "failure to give a definitional instruction when the term being defined has a legal meaning *different from* the commonly understood lay interpretation of the term may result in jury confusion that could place the verdict in doubt." 2018-NMCA-025, ¶ 22, 458 P.3d 457 (emphasis added) (alteration, internal quotation marks, and citation omitted). The jury was instructed that in order to convict it must find that Defendants "assaulted or attacked Otero County Detention Center, a jail." In its closing arguments, the State urged members of the jury to use their "common understanding" of assault and attack. Because the use notes make clear that the meaning of "assaulted" in the assault on a jail statute represents the lay meaning is thus rooted in common discourse, the definition of is not "akin to a missing elements instruction." *See Mascareñas*, 2000-NMSC-017, ¶ 20. *Compare State v. Ervin*, 1981-NMCA-068, ¶ 5, 96 N.M. 366, 630 P.2d 765 (holding that no evidence presented that the failure to define "dwelling" in connection with a burglary charge was a critical determination), *with Luna*, 2018-NMCA-025, ¶ 26 (concluding there to be fundamental error where the jury may have applied the "common understandings of the terms 'nudity' and 'harmful to minors' rather than their statutory definitions").

{18}    Defendants contend that "the misalignment between the meaning of the statute and the range of conduct covered by the elements instruction given to the jury constitutes 'a mistake in the process which makes a conviction fundamentally unfair.' " Specifically, Defendants assert that despite not having sought any instruction beyond that given by the district court in each trial, "the [juries were] extremely confused about what [they were] being asked to find," noting that in Anderson's trial the jury sought clarification on the definition of assault. As we have explained, the use notes to UJI 14-2227, the instruction given at both trials, states, "if the jury asks for a definition of 'assaulted,' use a non-law dictionary definition." UJI 14-2227 use note 2. There is no indication in the record that a definition of "assaulted" was given to the jury in either of Defendants' trials, despite Anderson's jury having so requested. Defendants argue that "the failures to define the terms 'assault' and 'jail' as well as to instruct the jury as to the requisite intent 'implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked.' "

{19}    It is clear at the outset that, given it gave no definition of assault when asked to do so by the jury, the district court failed to appropriately respond to the jury's inquiry.

*See* UJI 14-2227 use note 2. "[W]hen a jury requests clarification regarding the legal principals governing a case, the trial court has a duty to respond promptly and completely to the jury's inquiry." *State v. Juan*, 2010-NMSC-041, ¶ 16, 148 N.M. 747, 242 P.3d 314. Nonetheless, such error alone does not constitute fundamental error. "Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense[.]" *State v. Cunningham*, 2000-NMSC-009, ¶ 13, 128 N.M. 711, 998 P.2d 176; *see Barber*, 2004-NMSC-019, ¶¶ 13-14 (holding that the trial court's failure to sua sponte instruct the jury on the definition of possession did not constitute fundamental error). We exercise our discretion to apply fundamental error "very guardedly, and only where some fundamental right has been invaded, and never in aid of strictly legal, technical, or unsubstantial claims." *Cunningham*, 2000-NMSC-009, ¶ 12 (internal quotation marks and citation omitted). Because the juries received an elements instruction on assault on a jail that provided them with an opportunity to decide whether there was an assault applying their common sense as to the word's meaning, the given instructions did not constitute fundamental error.

**{20}** We are also not persuaded that the jury was "confused or misdirected by the jury instruction." *Luna*, 2018-NMCA-025, ¶ 19 (internal quotation marks and citation omitted). We note as well that, while the jury in Anderson's trial requested a definition of assault, they were encouraged to do so by defense counsel's closing arguments, in which defense counsel stated, "What is assault? I don't know. There's no definition. When you're back in the jury room, if you have questions about things, your foreman can send a note out here to the judge."[5] The jury in Wilson's trial did not ask for a definition. Additionally, because the definition of assault that would have been provided was a non-law dictionary definition, such a definition would not have meaningfully, and certainly not technically, added to the jurors' understanding of the relevant law. *See* UJI 14-2227 use note 2.

**{21}** The evidence presented at trial further persuades us that there is no reasonable likelihood that the jury was confused by the instruction. The juries in both trials observed both Defendants participating in the conflict through surveillance footage. To reiterate, the juries saw video evidence depicting the inmates refusing to lock down, pouring liquid soap onto the floor near the stairs, misusing a mattress and plastic cot to attempt to block the pod entrance, and physically resisting the advance of law enforcement officers attempting to restore order in the pod and enforce a lockdown. Given such trial evidence, Defendants' convictions do not "shock[] the conscience." *Astorga*, 2015-NMSC-007, ¶ 14 (internal quotation marks and citation omitted). We hold that the district

---

5We take a moment to note that encouraging a jury to question the district court regarding an instruction to which defense counsel neither objected nor requested definitional supplementation appears to invite error, which cannot be a basis for reversal. *See State v. Collins*, 2007-NMCA-106, ¶ 27, 142 N.M. 419, 166 P.3d 480 (stating "to allow a defendant to invite error and to subsequently complain about that very error would subvert the orderly and equitable administration of justice" (alteration, internal quotation marks, and citation omitted)).

court did not commit fundamental error in instructing the jury on the assault on a jail instruction.

## IV. The District Court Did Not Commit Reversible Error in Refusing Anderson's Request to Instruct the Jury on Lesser Included Offenses

**{22}** In addition to the arguments raised by both Defendants, Anderson also argues that because the district court denied his requests for lesser included offense instructions of disorderly conduct and evading or obstructing an officer, the district court committed reversible error. If the alleged error has been preserved, we review for reversible error. *Benally*, 2001-NMSC-033, ¶ 12. A claim of error is generally preserved by "[t]he tender but refusal of an instruction." *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 40, 134 N.M. 77, 73 P3d 215.

**{23}** "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instructions." *State v. Cardenas*, 2016-NMCA-042, ¶ 5, 380 P.3d 866 (alteration, internal quotation marks, and citation omitted).

> A failure to instruct the jury on a lesser included offense is reversible error if: (1) the lesser offense is included in the greater, charged offense; (2) there is evidence tending to establish the lesser included offense and that evidence establishes that the lesser offense is the highest degree of crime committed; and (3) the defendant has tendered appropriate instructions preserving the issue.

*State v. Hill*, 2001-NMCA-094, ¶ 16, 131 N.M. 195, 34 P.3d 139 (alteration, internal quotation marks, and citation omitted).

**{24}** We first address preservation—the third *Hill* criterion. The State contends that Anderson did not tender either of the lesser included jury instructions requested at trial. Citing *State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537, Anderson argues that because "the record reflects that the judge clearly understood the type of instruction [Anderson] wanted," the issue is sufficiently preserved for appellate review. Having reviewed the trial audio and considered the nature of the conversation between Anderson's attorney and the district court, we assume without deciding that Anderson properly preserved this argument. Nonetheless, we find no error.

**{25}** Regarding the first *Hill* criterion—whether the lesser offenses are included in the greater, charged offenses—the State asserts that neither disorderly conduct nor evading or obstructing an officer is a lesser included offense of Section 30-22-19, and further, that neither charge fits Anderson's conduct. As to the lesser included instruction of disorderly conduct, the State asserts that the crime is not intended to apply to inmate behavior. "Disorderly conduct consists of . . . engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace[.]" NMSA 1978, § 30-20-1(A) (1967). The New Mexico Supreme Court

has "defined 'disturbing the peace' as a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *State v. Correa*, 2009-NMSC-051, ¶ 22, 147 N.M. 291, 222 P.3d 1 (internal quotation marks and citation omitted). "[T]he standard is whether [a] defendant's conduct tends to disturb the *public peace*." *Id.* (emphasis added) (emphasis, internal quotation marks, and citation omitted). The State argues that Anderson's conduct does not fit the crime because "[t]he use of the words 'community' in the statute and 'peace and quiet' " indicate that the statute is intended to foster calm in public spaces. We agree. Anderson's conduct did not occur in a public place, nor were his actions an act of violence capable of disturbing a community of the sort protected from such by Section 30-22-19. Accordingly, that which the statute prohibits is not triggered by the instant circumstance. *See State v. Meadors*, 1995-NMSC-073, ¶ 17, 121 N.M. 38, 908 P.2d 731 ("[A]n offense is a lesser[]included offense only if the defendant cannot commit the greater offense in the manner described in the charging document without also committing the lesser offense.").

{26}    The State similarly argues that Anderson's actions did not resist, evade, or obstruct an officer given that Anderson "had already been apprehended and arrested when he participated in the assault on the jail." Anderson argues that the jury could have found he "intentionally fled or attempted to evade an officer but did not actually engage in an assault on a jail." Again, we agree with the State. In New Mexico, resisting or evading arrest is defined in relevant part as "intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer *is attempting to apprehend or arrest him*[.]" NMSA 1978, § 30-22-1(B) (1981) (emphasis added). At trial, Anderson argued that his actions constituted "moving away" despite video evidence that he ran up the stairs to join fellow inmates in using jail property designed for another purpose to repel law enforcement officers back down the stairs leading to the pod. Regardless, we do not consider Anderson's actions to equate with an effort to avoid apprehension or arrest as contemplated by Section 30-22-1(B). Because we determine that neither disorderly conduct nor resisting arrest is a lesser included offense of assault on a jail, we decline to address the final *Hill* criteria. We conclude that the district court did not commit reversible error in denying the lesser included instructions sought by Anderson.

## V.    The State Presented Sufficient Evidence to Support Defendants' Convictions

{27}    Defendants challenge the sufficiency of the evidence as to their convictions for assault on a jail. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). Our review employs a

two-step process in which we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Cunningham*, 2000-NMSC-009, ¶ 26. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179.

**{28}** Defendants argue that the "State presented no evidence of actual property damage, physical injury to anyone other than the prisoners, entry or penetration into the jail, or intent to assist in the killing or escape of prisoners." The State answers that a "conviction under Section 30-22-19 does not require actual property damage, physical injury to a person, or an element of [specific] intent. The State needed only to prove that Defendant[s] assaulted or attacked the Otero County Jail, which the State unequivocally did." We have already held that no such requirement as those argued by Defendants appear in the statute and therefore need not have appeared in the jury instructions as to the elements of the offense, and given the absence of legal error, the "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. Under the instruction given, the State need only have established that Defendants assaulted or attacked the jail they were in on the date alleged in the indictments.

**{29}** Our review of the State's evidence reveals it bore directly upon that required by Section 30-22-19 and the instruction given. As stated, during both trials the State presented video evidence that showed inmates' efforts to disobey the shift change lockdown order by misusing jail property to disable access into the pod by prison officials and law enforcement officers arriving to assist them. The surveillance footage clearly depicted Anderson participating in that conflict. In Wilson's trial, the State presented the same footage, along with additional still images depicting Wilson reaching his arm over a misused mattress and striking one of the approaching officers.

**{30}** Viewing this "evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict[,]" it is sufficient to support Defendants' convictions. *Cunningham*, 2000-NMSC-009, ¶ 26. Defendants' collective actions attacked the jail and imperiled the function and safety of the facility in a dangerous and destructive manner that satisfied the State's burden under Section 30-22-19, as well as the elements jury instruction provided by the district court. As such, we hold that the State presented sufficient evidence to support Defendants' convictions of assault on a jail. *See State v. Vargas*, 2016-NMCA-038, ¶ 27, 368 -P.3d 1232 ("New Mexico appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of- witnesses, reweighing the evidence, or substituting its judgment for that of the jury." (internal quotation marks and citation omitted)).

## VI. The District Court Did Not Commit Reversible Error in Denying Anderson's Motion to Continue

**{31}** Anderson finally argues that the district court erred in denying his motion for a continuance. We review the district court's denial of a continuance for an abuse of discretion. *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135 (stating that "[t]he grant or denial of a continuance is within the sound discretion of the trial court, and the burden of establishing abuse of discretion rests with the defendant"). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). It is a defendant's burden to establish an abuse of discretion, and further, "that the abuse was to the injury of the defendant." *Salazar*, 2007-NMSC-004, ¶ 10 (internal quotation marks and citation omitted).

**{32}** A district court evaluates a motion for continuance by applying factors set forth by our New Mexico Supreme Court in *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20. Anderson contends that to "consider" the factors, the district court must "think about [this] evidence with a degree of care and caution." Because the district court gave no indication of its consideration of the *Torres* factors, Anderson argues, the district court failed to apply *Torres* and thereby abused its discretion. The State answers that the "trial court was not obligated to expressly weigh the *Torres* factors on the record."

**{33}** The seven factors are:

> the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion.

*Id.* It has not been held, however, that the district court is required to set forth the factual basis of its decision to deny or grant the motion, and we will not presume from the absence of stated findings in the record that it failed to apply *Torres*. *See State v. Gonzales*, 1999-NMCA-027, ¶ 11, 126 N.M. 742, 975 P.2d 355 ("No rule of criminal procedure requires the district court to set forth the factual basis of its decision."); *see also State v. Finnell*, 1984-NMSC-064, ¶ 23, 101 N.M. 732, 688 P.2d 769 ("Abuse of discretion must be shown and will not be presumed.").

**{34}** Applying the *Torres* factors, we conclude that the district court did not abuse its discretion in denying the motion for a continuance. We briefly explain. Regarding the first factor—the length of the desired continuance—Anderson requested a continuance until the district court's next scheduled trial setting, which would have been three

months later. *Compare Torres*, 1999-NMSC-010, ¶ 15 (holding that a requested delay of a week or less weighed in favor of granting a continuance), *with State v. Salazar*, 2006-NMCA-066, ¶ 24, 139 N.M. 603, 136 P.3d 1013 (holding that the denial of a continuance was appropriate where the delay was likely at least two months). Regarding the second factor—the likelihood that a delay would accomplish the movant's objectives—a delay would arguably have helped Anderson accomplish his objectives given his stated desire to prepare a constitutional challenge to the assault on a jail statute. As to the third factor, there was one prior continuance. *See State v. Gonzales*, 2017-NMCA-080, ¶ 36, 406 P.3d 534 (explaining that prior continuances delaying trial by three months weighed against the defendant on the third *Torres* factor).

**{35}**    The fourth factor—the degree of inconvenience to the parties and the court—strongly supports the denial of Anderson's motion because defense counsel proposed the continuance on the morning of trial. *See id.* (noting that "we presume resetting the trial date on the day trial is supposed to begin is inconvenient for the parties and for the court"); *see also State v. Aragon*, 1997-NMCA-087, ¶ 22, 123 N.M. 803, 945 P.2d 1021 ("[A]s a general rule, a motion for continuance filed at the last minute is not favored."). The fifth and sixth factors—whether the continuance was requested in bad faith and the fault of the movant in causing a need for the delay—favor granting Anderson's motion, given the absence of evidence of bad faith and the fact that Anderson's attorney had joined her law firm twenty-one days prior to the trial and only received notice of the trial two weeks prior. *See State v. Stefani*, 2006-NMCA-073, ¶¶ 12, 16, 139 N.M. 719, 137 P.3d 659 (assignment of the case to the public defender was confirmed only twenty-eight days prior to trial weighed in favor of granting motion to continue).

**{36}**    As to the final *Torres* factor, we conclude that Anderson suffered no prejudice in the denial of his motion. "No more prejudice need be shown than that the trial court's order may have made a potential avenue of defense unavailable to the defendant." *Salazar*, 2007-NMSC-004, ¶ 16 (internal quotation marks and citation omitted). "We do not ask whether the evidence was critical but, instead, whether the defendant made a plausible showing of how the . . . testimony would have been both material and favorable to his defense." *Id.* (alteration, internal quotation marks, and citation omitted). The morning of the trial, defense counsel raised concerns of constitutional vagueness stating, "I would like to bring to the court's attention that it's really difficult for an attorney to understand what an assault on a jail might be, let alone a lay person . . . moving forward, there might be a constitutionally unjust vague statute at issue here." While Anderson asserts that the district court order prejudiced him because he was not able to present his constitutional vagueness argument, we disagree. To the contrary, defense counsel successfully raised, and we fully address, that very contention in this opinion. Moreover, Anderson points to no additional witnesses or evidence that he would have presented had the motion for a continuance been granted. Under the abuse of discretion standard, where legal principals are correctly applied and their application can yield multiple outcomes, we give deference to the district court's ruling. *See State v. Ferry*, 2018-NMSC-004, ¶ 2, 409 P.3d 918. Under these circumstances, we conclude that the district court did not abuse its discretion in denying Anderson's motion for a continuance. *See In re Camino Real Env't Ctr., Inc.*, 2010-NMCA-057, ¶ 23, 148 N.M.

776, 242 P.3d 343 ("When reasons both supporting and detracting from a decision exist, there is no abuse of discretion.").

**CONCLUSION**

**{37}** For the foregoing reasons, we affirm Defendants convictions for assault on a jail.

**{38}** **IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**