This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40702

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**BRYAN LIEBOWITZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Shannon Murdock, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Peter James O'Connor, Assistant Solicitor General
Albuquerque, NM

for Appellee

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Defendant Bryan Liebowitz appeals his conviction of sexual exploitation of children (possession), contrary to NMSA 1978, Section 30-6A-3(A) (1984, as amended through 2016). On appeal, Defendant argues (1) the district court committed fundamental error by failing to provide the jury with the definition of "possession"; and (2) the evidence was insufficient to support a finding that he "possessed" child

pornography on his school-issued laptop and network file. For the reasons that follow, we affirm.

**BACKGROUND**

**{2}**　　The following facts were presented during Defendant's trial. Defendant worked as a mechanic for the Truth or Consequences School District from 2014 to 2017. Defendant kept his school-issued laptop on a desk in a common area of the school mechanic facility. Defendant used the laptop to look up parts, prices, and wiring diagrams in order to fix busses. Defendant testified that he saved his username and password in the laptop so it would be easier to login. Bus drivers and school employees also used Defendant's laptop and according to Defendant, others used his saved login credentials.

**{3}**　　In September 2017, John Adkins, an educational assistant in the school computer lab, found child pornography videos in a shared media file labeled "BLiebowitz." Adkins explained that he clicked on a shared media device with the name "B.Liebowitz", and saw another folder with videos, some of which were inappropriate. Adkins believed others could only view the material in the folder, although he was not certain.

**{4}**　　Mike Torres, IT director for the school district accessed Defendant's laptop on the shared network and located several child pornography videos. When asked whether any of the users at the school who had access to the shared file were capable of placing items into the file, Torres testified that he did not know because he could not recall if the shared file was "read-only." The matter was reported to law enforcement.

**{5}**　　Alex Rodriguez, a forensic examiner, performed a forensic diagnostic review of Defendant's laptop and found over 500 child pornography videos, of mostly children younger than thirteen years old, in Defendant's download folder. Rodriguez testified that there were five or six user accounts on Defendant's laptop. However, the child pornography files were only being accessed and bookmarked by Defendant's user account. Rodriguez additionally testified that the child pornography had been downloaded between 2016 and 2017. Before 2016, child pornography was not present on Defendant's account. Rodriguez testified that one particular child pornography video was accessed on December 14, 2016, and again in June 13, 2017.

**{6}**　　Defendant testified that he never saw child pornography files on his laptop and as far as he knew, there were no such files on his laptop. Defendant additionally testified that he could not override the firewall that precluded people from downloading pornography. However, Torres testified that "all employees . . . had the ability to override the [firewall] filter."

**{7}**　　David Dow testified as an expert in computers and computer science on behalf of Defendant. Dow testified that he did not inspect Defendant's laptop, and "without

actually being on [Defendant's laptop] and running . . . tools to . . . figure out what was on [the laptop]," he did not know if it contained malware.

**{8}** Relevant to this appeal, the district court instructed the jury on the elements of sexual exploitation of children (possession) along with a general intent instruction. Defendant did not request that the district court provide the jury with the definition of "possession" as provided in UJI 14-130 NMRA. The jury convicted Defendant of sexual exploitation of children (possession). This appeal followed.

## DISCUSSION

### I. Sufficient Evidence Supports Defendant's Conviction for Sexual Exploitation of Children (Possession)

**{9}** Defendant argues there was insufficient evidence to support his conviction for sexual exploitation of children (possession). Evidence is sufficient to sustain a conviction when there exists "substantial evidence of either a direct or circumstantial nature . . . to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{10}** The district court instructed the jury on the elements of sexual exploitation of children in part as follows:

> For you to find [D]efendant guilty of sexual exploitation of children (possession) as charged in Count 3, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant intentionally possessed a visual or print medium[;]
>
> 2. The medium depicts a prohibited sexual act;
>
> 3. [D]efendant knew or had reason to know that medium depicts prohibited sexual act;
>
> 4. [D]efendant knew or had reason to know that one or more of the participants in the act is a child under eighteen years of age.

This instruction tracks the approved uniform jury instruction containing the statutory elements for sexual exploitation of children. *See* UJI 14-131; *see also* § 30-6A-3(A) ("It is unlawful for any person to intentionally possess any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if that person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act and if that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age."); *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 (recognizing that "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured").

**{11}** Defendant does not dispute that child pornography was found on his school-issued laptop. Instead, Defendant challenges the sufficiency of the evidence with respect to whether he "intentionally possessed" the child pornography on his laptop. In particular, Defendant claims there was no evidence demonstrating that he knew child pornography was on the laptop issued to him and in the files identified with his name or that he accessed or controlled the folder and files containing child pornography.

**{12}** We agree with the State that it presented sufficient evidence demonstrating that Defendant intentionally possessed the child pornography found on his laptop. The evidence showed that Defendant worked for the school district during the time over 500 child pornography videos were downloaded and discovered in his download folder within a shared media file when one particular child pornography video was accessed. This was the same laptop Defendant used to look up parts, prices, and diagrams in order to perform maintenance and repair (to do his job). Although there were five or six user accounts on Defendant's laptop, only Defendant's account accessed and bookmarked the child pornography.

**{13}** The State presented evidence showing that the application for the download folder was configured to show a thumbnail or screenshot of the content of the child pornography videos and that the file names were "indicative of suspected child pornography."[1] In addition, the evidence revealed that Defendant's download folder also contained nonchild pornography files with some of those files having been deleted. Finally, the State's expert witness who examined Defendant's laptop, testified that he saw no evidence that a computer bot downloaded child pornography on Defendant's laptop.

**{14}** From this evidence, a reasonable jury could infer that between 2016 and 2017, Defendant knowingly possessed child pornography on his laptop because each time he retrieved saved work files from his download folder, he would see thumbnails with screen shots of over 500 child pornography videos and thumbnail file names which were indicative of suspected child pornography. Based on this evidence, it was reasonable for the jury not to credit Defendant's claim that he never saw child pornography files on his laptop and did not know such files were on his laptop. *See*

---

[1] The forensic examiner reviewed the file names and provided the jury with examples of the file names, which we need not repeat here.

*State v. Smith*, 2024-NMCA-068, ¶ 1, ___ P.3d ___, (recognizing that "[d]etermining the credibility of witnesses at trial is a core function of the jury").

**{15}** Additionally, the evidence revealed five or six other accounts on Defendant's laptop, suggesting that people using the laptop used their own accounts and not Defendant's account and credentials as he claimed. The jury could also reasonably conclude that during Defendant's employment he controlled his download folder, which contained child pornography, as evidence by the testimony that some of the nonchild pornography files had been deleted, whereas some nonchild pornography files had not been deleted.

**{16}** Defendant additionally challenges the sufficiency of the evidence by pointing to "evidence" that he believes contradicts the jury verdict and supports an acquittal. According to Defendant, [his] expert witness testified that (1) there were thousands of requests to download child pornography during a twenty-four-hour period; (2) his expert believed the child pornography to have been the result of malware operating on Defendant's devices and laptop; (3) the downloads could have been the result of computer bots or malware, and malware could have been used to create a proxy computer, which would have access to shared files but not show that the files were originating from another computer; and (4) the evidence demonstrated that other employees had access to his shared folder.

**{17}** We do not consider whether evidence exists to support an opposite result from that reached by a jury, and "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19. Nevertheless, we briefly address Defendant's assertions regarding the testimony from his expert witness and alleged evidence.

**{18}** Defendant first contends that there were "thousands of requests to download child pornography [onto Defendant's laptop] during a twenty-four-hour period." Our review of the transcript reveals that Defendant's expert testified that he reviewed a firewall log of internet activity defense counsel provided to him from Defendant's profile that covered an undisclosed twenty-four hour-period and that he saw thousands of requests which he testified could have been anything, an image, wording, or "anything that they build as part of a webpage more than likely." Dow did not identify the subject of the requests as being child pornography and it would be inappropriate under our standard of review to infer that Dow was referring to child pornography. *See id.*

**{19}** Next, we address Defendant's contentions that Dow believed the child pornography to have been the result of malware operating on Defendant's devices and the computer system and that malware could have been used to create a proxy computer, which would have access to shared files on Defendant's laptop to download child pornography.

**{20}** The transcript reveals no testimony in which Dow asserted he believed the child pornography to have been the result of malware operating on Defendant's laptop. To

the contrary, Dow testified that he did not inspect Defendant's laptop, and "without actually being on [Defendant's laptop] and running . . . tools to . . . figure out what was on [the laptop]," he did not know if there was malware on Defendant's laptop. With regard to malware creating a proxy computer, the State's expert did not find download records to support the suggestion that a bot or malware downloaded child pornography files into Defendant's account on the laptop.

**{21}**    Finally, although child pornography was located on Defendant's shared file, the State's expert explained that if a person on another computer with access to Defendant's shared file wanted to download a file, that the downloaded file would be directed to the computer with the IP address making the request. Therefore, it would not have been downloaded to Defendant's laptop download file.

**{22}**    Based on the forgoing, we hold that substantial evidence supports Defendant's conviction for sexual exploitation of children.

## II.    Omission of the Definition of Possession Instruction Was Not Fundamental Error

**{23}**    Defendant argues the district court should have instructed the jury on the definition of "possession" as set forth in UJI 14-130. Where, as here, Defendant asserts error based on the district court's failure to provide a definitional instruction that was neither requested nor given, we review for fundamental error. *See* Rule 12-231(B)(2)(c); *see also State v. Candelaria*, 2019-NMSC-004, ¶ 31, 434 P.3d 297 (reviewing purported error in jury instructions for fundamental error because it was not raised at trial). "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. "[T]he general rule is that fundamental error occurs when the trial court fails to instruct the jury on an essential element." *State v. Lucero*, 2017-NMSC-008, ¶ 27, 389 P.3d 1039 (internal quotation marks and citation omitted). However, "[o]ur courts have" repeatedly "stated that a missing definition generally cannot result in the sort of fundamental unfairness that undermines the integrity of the judicial system unless, the missing definition is akin to a missing elements instruction." *State v. Wilson*, 2021-NMCA-031, ¶ 16, 493 P.3d 434 (alteration, internal quotation marks, and citations omitted).

**{24}**    Fundamental error analysis in this context begins with applying the standard for reversible error by determining if a reasonable juror "would have been confused or misdirected by the jury instruction[s]. *Barber*, 2004-NMSC-019, ¶ 19. "Juror confusion or misdirection may stem from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Anderson*, 2016-NMCA-007, ¶ 9, 364 P.3d 306 (internal quotation marks and citation omitted). "If we determine that a reasonable juror would have been confused or misdirected by the instructions given, our fundamental error analysis requires us to then review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the

result of a plain miscarriage of justice." *Id.* (alteration, internal quotation marks, and citation omitted).

**{25}**    In addition to the elements instruction already set forth in this opinion, the district court instructed the jury as follows:

> In addition to the other elements of [s]exual [e]xploitation of [c]hildren . . . ([p]ossession) the [S]tate must prove to your satisfaction beyond a reasonable doubt that [D]efendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime. Whether [D]efendant acted intentionally may be inferred from all the surrounding circumstances, such as the manner in which he acts, the means used and his conduct and any statements made by him.

This instruction tracts the approved uniform jury instruction for general criminal intent. *See* UJI 14-141 NMRA.

**{26}**    Defendant contends his knowledge of the child pornography on the laptop was at issue and as a result the failure to give the definition of "possession" confused the jury because "the possession instruction would have provided a determination critical to understanding the elements instruction." UJI 14-130 defines "possession" as follows:

> A person is in possession of _____ (name of object) when, on the occasion in question, he knows what it is, he knows it is on his person or presence and he exercises control over it.

The instructions provide three sentences that may be used depending on the evidence. Those sentences read as follows:

> [Even if the object is not in his physical presence, he is in possession if he knows what it is and where it is and he exercises control over it.]

> [Two or more people can have possession of an object at the same time.]

> [A person's presence in the vicinity of the object or his knowledge of the existence or location of the object is not, by itself, possession.]

UJI 14-130, use note 2.

**{27}**    Defendant's argument regarding the absence of an instruction defining "possession" and juror confusion are undeveloped. Defendant introduced a quote from a secondary sources in *Barber*, in which the opinion acknowledges that with regard to "possession," the potential for juror confusion exists. *See* 2004-NMSC-019, ¶ 22. The quote from *Barber*, reads in part as follows: "When actual physical control cannot be directly proven, constructive possession is a legal fiction used to expand possession

and include those cases where the inference that there has been possession at one time is exceedingly strong." *Id.* (internal quotation marks and citation omitted). Defendant additionally provides this Court with the language contained in UJI 14-130 and makes a single conclusory assertion that "[t]he failure to give the possession instruction, therefore, resulted in juror confusion."

**{28}** Defendant then asserts that since his "knowledge" was at issue, the absence of the definition of "possession" resulted in a miscarriage of justice because the child pornography was on a shared folder that was accessible by others, and the laptop had not been scrubbed before he received it. Defendant made no argument demonstrating that the definition of possession is more "akin to a missing elements instruction," as is necessary to demonstrate fundamental error. *See Anderson*, 2021-NMCA-031, ¶ 16 (internal quotation marks and citation omitted).

**{29}** In any appeal before this Court "it is the appellant's burden to demonstrate, by providing well-supported and clear arguments that the district court has erred." *Premier Tr. of Nev., Inc., v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261. As stated above, and contrary to Rule 12-318(A) NMRA, Defendant failed to develop an argument explaining why or how the absence of the definitional instruction for "possession" in this case was more "akin to a missing elements instruction" or how it caused juror confusion, or why the ordinary meaning of possession was somehow insufficient to convey the concept to the jury in this instance. *See* Rule 12-318(A)(4) (requiring in part that the brief in chief include "an argument . . .with respect to each issue." We decline to develop such an argument on Defendant's behalf. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be."(alteration, internal quotation marks, and citation omitted)).

**CONCLUSION**

**{30}** For the foregoing reasons, we affirm.

**{31} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KRISTINA BOGARDUS, Judge**